UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| ALEX D. MOGLIA, in his capacity as court-appointed receiver,<br><br>Plaintiff,<br><br>v.<br><br>MARIE R. ISRAELSEN, et al.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING MOTIONS FOR ORDER AUTHORIZING ALTERNATIVE SERVICE OF PROCESS (DOC. NOS. 53 & 54)**<br><br>Case No. 1:25-cv-00086<br><br>Chief District Judge Jill N. Parrish<br><br>Magistrate Judge Daphne A. Oberg |

In this receivership action, Alex Moglia, the court-appointed receiver, seeks leave to serve Jeremy Israelsen, Kanokwan Israelsen, and Michael Israelsen by email.[1] Because Mr. Moglia's proposed methods of alternative service are not reasonably calculated to provide these defendants with notice of this action and an opportunity to respond, the motions are denied.

BACKGROUND

Until his death in October 2024, Mark Israelsen owned and controlled several companies.[2] In February 2025, East West Bank sued these companies for fraud

---

[1] (Mot. for Alt. Serv. of Jeremy Israelsen (First Mot.), Doc. No. 53; Mot. for Alt. Serv. of Kanokwan & Michael Israelsen (Second Mot.), Doc. No. 54.)

[2] (Compl. ¶ 1, Doc. No. 1.) Specifically, these companies were Quantum IR Technologies LLC, QIR Technology Holdings, Inc., QIR Air Resources LLC, and QIR Cement Thermal Technology, LLC, which the complaint here refers to as the Receivership Defendants. (*Id.* at 1.)

committed by Mr. Israelsen.[3]  The court appointed Mr. Moglia[4] as receiver "to identify, collect, and preserve the assets of the Receivership Estate for the benefit of the estate's creditors."[5]  The present action followed.

Mr. Moglia named several individuals who allegedly received funds from Mark Israelsen and his companies.[6]  Relevant here are Jeremy Israelsen, Kanokwan Israelsen, and Michael Israelsen, who have not been served or appeared in this case.[7]  Jeremy is Mark's son from a previous marriage.[8]  Kanokwan is Mark's widow, and Michael is their son.[9]  Kanokwan and Mark also have another son, Chanon Israelsen, who is not a party to this case but is relevant to Mr. Moglia's motions for alternative service.[10]

---

[3] *See East West Bank v. QIT Technology Holdings, Inc., et al.*, No. 2:25-cv-00105 (D. Utah).

[4] (*Id.*, Order Granting Mot. to Appoint Receiver, Doc. No. 30.)  After Mr. Israelsen passed, Mr. Moglia was named president and secretary of the companies at the request of the secured lenders and investors.  (*Id.* at 2.)

[5] (Compl. ¶ 5, Doc. No. 1.)

[6] (*Id.* ¶ 8.)

[7] (*Id.* ¶¶ 8, 10.)  Because they share a last name, these individuals, as well as Mark Israelsen, are referred to by first name for clarity.

[8] (*Id.* ¶ 62.)

[9] (*Id.* ¶¶ 65, 72.)

[10] (*See* Second Mot. 2, Doc. No. 54.)

In June 2025, Mr. Moglia unsuccessfully attempted to serve Jeremy, Kanokwan, and Michael personally at addresses in Utah.[11] The process server learned Jeremy recently moved to the Netherlands and Kanokwan and Michael moved to Thailand upon Mark's death.[12] Through "emails and records" of Mark's companies, Mr. Moglia "identified" an email address (jisraelsen@gmail.com) that "Jeremy used to communicate with Mark."[13] Mr. Moglia similarly identified two email addresses for Michael (reisen.a11@gmail.com and toibmw1@gmail.com) but none for Kanokwan.[14] Mr. Moglia also has Chanon's email address (chanon.israelsen@gmail.com) because Chanon contacted Mr. Moglia's counsel in July 2025 "on behalf of his mother."[15]

Pursuant to Rule 4(f)(3) of the Federal Rules of Civil Procedure, Mr. Moglia moves to serve Jeremy, Kanokwan, and Michael by email. Specifically, he seeks to serve Jeremy by emailing the complaint and summons to jisraelsen@gmail.com and to serve Kanokwan and Michael by emailing the same to reisen.a11@gmail.com, toibmw1@gmail.com, chanon.israelsen@gmail.com.[16]

---

[11] (Ex. A to First Mot., Decl. of Daniel Nelson (First Nelson Decl.) ¶¶ 3–5 & Ex. 1 to First Nelson Decl., Doc. No. 53-1; Ex. A to Second Mot., Decl. of Daniel Nelson (Second Nelson Decl.) ¶¶ 3–5 & Exs. 1 & 2 to Second Nelson Decl., Doc. No. 54-1.)

[12] (First Nelson Decl. ¶ 6, Doc. No. 53-1; Second Nelson Decl. ¶ 6, Doc. No. 54-1.)

[13] (First Nelson Decl. ¶¶ 7–8, Doc. No. 53-1.)

[14] (Second Nelson Decl. ¶¶ 8, 10, Doc. No. 53-1.)

[15] (*Id.* ¶ 9.)

[16] (First Mot. 5, Doc. No. 53; Second Mot. 5–6, Doc. No. 54.)

## LEGAL STANDARDS

Rule 4(f) governs service of an individual outside the United States and permits service as follows:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice [as enumerated in subsections (A)–(C)]; or
>
> (3) by other means not prohibited by international agreement, as the court orders.[17]

Courts interpreting Rule 4(f) have concluded it does not create a hierarchy of preferred methods of service, and parties are not required to comply with Rule 4(f)(1) or (2) before seeking service under Rule 4(f)(3).[18] The relevant inquiry under Rule 4(f)(3) is whether the requested method of service is prohibited by international agreement, including the Hague Convention.[19] A method of service authorized under

---

[17] Fed. R. Civ. P. 4(f).

[18] *See, e.g.*, *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002); *Neck Hammock, Inc. v. Danezen.com*, No. 2:20-cv-00287, 2020 U.S. Dist. LEXIS 202808, at *8 (D. Utah Oct. 29, 2020) (unpublished).

[19] *Compañía de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1294 (10th Cir. 2020); *Rio Props.*, 284 F.3d at 1015 n.4; *Neck Hammock*, 2020 U.S. Dist. LEXIS 202808, at *9.

Rule 4(f)(3) must also comport with constitutional notions of due process, meaning it must be "reasonably calculated to provide notice and an opportunity to respond."[20]

ANALYSIS

The present motions fail to satisfy Rule 4(f)(3) because the proposed alternative methods of service are not reasonably calculated to provide Jeremy, Kanokwan, and Michael with notice of this action and an opportunity to respond.

First, Mr. Moglia requests leave to serve Jeremy by email because he moved to the Netherlands. Service by email is not prohibited by international agreement. The Netherlands is a signatory to the Hague Convention.[21] The Hague Convention does not expressly prohibit service by email, and courts have permitted it under Rule 4(f)(3).[22] However, the requested method of alternative service for Jeremy does not comport with constitutional notions of due process. Mr. Moglia states he accessed "emails and records" from Mark's companies and "identified the email address that Jeremy used to communicate with Mark"—jisraelsen@gmail.com.[23] But Mark died in October 2024.[24]

---

[20] *Neck Hammock*, 2020 U.S. Dist. LEXIS 202808, at *11–12 (quoting *Rio Props.*, 284 F.3d at 1017).

[21] *See* Contracting Parties, Hague Conference on Private International Law, (Hague Contracting Parties) https://www.hcch.net/en/instruments/conventions/status-table/?cid=17 [https://perma.cc/B99R-65TG].

[22] *See, e.g.*, *Neck Hammock*, 2020 U.S. Dist. LEXIS 202808, at *11–12; *Williams-Sonoma Inc. v. Friendfinder, Inc.*, No. C 06-06572, 2007 U.S. Dist. LEXIS 31299, at *5–6 (N.D. Cal. Apr. 17, 2007) (unpublished).

[23] (First Mot. 3, Doc. No. 53; First Nelson Decl. ¶¶ 7–8, Doc. No. 53-1.)

[24] (Compl. ¶ 1, Doc. No. 1.)

And it is unclear when Jeremy used this email address. Mr. Moglia offers no evidence suggesting the email address is valid, current, or active. For instance, he does not state whether he or his counsel have attempted contact via the email address and received a non-delivery report. Without such information, Mr. Moglia has not shown the proposed method of service to Jeremy is reasonably calculated to provide notice of this action and an opportunity to respond. None of the cases Mr. Moglia cites support a different conclusion.[25]

---

[25] *See Purple Innovation, LLC v. Chuang Fan Handicraft Co.*, No. 2:22-cv-00620, 2023 U.S. Dist. LEXIS 75678, at *4 (D. Utah Apr. 28, 2023) (unpublished) (finding email service proper because plaintiff "presented evidence that it ha[d] valid and current email addresses" of the foreign defendants); *Great Bowery v. Best Little Sites*, No. 2:21-cv-00567, 2022 U.S. Dist. LEXIS 100972, at *8 (D. Utah Mar. 24, 2022) (unpublished) (finding email service proper where the plaintiff emailed a defendant and received a response from his attorney and "proffered evidence" of another defendant Tweeting his email address); *Blackbird Cap. LLC v. Worth Grp. Cap., LLC*, No. 2:21-cv-00037, 2022 U.S. Dist. LEXIS 27977, at *3–5 (D. Utah Feb. 15, 2022) (unpublished) (finding service by email reasonably calculated to provide notice where the plaintiff believed the defendant was "avoiding service" and had communicated with the defendant via the email address in the past); *DP Creations, LLC v. Reborn Baby Mart*, No. 2:21-cv-00574, 2021 U.S. Dist. LEXIS 266076, at *20–21 (D. Utah Nov. 22, 2021) (unpublished) (finding email service proper based on evidence the defendants "primarily communicate[d]" via email, and "the emails provided [were] the primary email addresses listed on Defendants' websites"); *Love-Less Ash Co., Inc. v. Asia Pac. Constr., LLC*, No. 2:18-cv-00595, 2021 U.S. Dist. LEXIS 157375, at *3 (D. Utah Aug. 19, 2021) (unpublished) (finding service by email reasonably calculated to provide notice where the plaintiffs' counsel believed the email address was active, "because he sent a test email . . . and did not receive a notice that the email was undeliverable"); *Mattel, Inc. v. AnimeFun Store*, No. 18 CIV. 8824, 2020 U.S. Dist. LEXIS 77660, at *12–13 (S.D.N.Y. May 1, 2020) (unpublished) (finding email service proper where the defendants "regularly communicate[d] with customers through email" and the plaintiff received receipts showing the emails were "sent to, delivered to and received by" each defendant).

Second, the proposed methods of service to Michael and Kanokwan similarly fail to comport with constitutional notions of due process. Mr. Moglia wants to serve Kanokwan and Michael by email because they moved to Thailand upon Mark's death. Even assuming this request is not prohibited by international agreement,[26] it is not reasonably calculated to provide these individuals with notice and an opportunity to respond. Mr. Moglia does not provide any of the documents in which he found Michael's email addresses. The email addresses do not use Michael's name—reisen.a11@gmail.com and toibmw1@gmail.com. And there is no evidence suggesting they are valid, current, or active. As with Jeremy, Mr. Moglia provides no evidence of attempts to make contact via the email addresses for Michael.

Mr. Moglia likewise fails to justify his request to serve Kanokwan by emailing the complaint and summons to her sons, Michael and Chanon. This request appears to rest on the following: Kanokwan did not have a personal email while Mark was alive;[27] Mr. Moglia identified emails for Michael in unidentified records (as discussed above); Chanon emailed counsel "on behalf of his mother" in July;[28] and Chanon and Michael

---

[26] Thailand is not a signatory to the Hague Convention. See Hague Contracting Parties supra note 21. Accordingly, the legal authority relating to interpreting Hague Convention standards in light of Rule 4 does not apply. And Mr. Moglia did not address whether service by email on a resident of a non-Hague country is prohibited by international agreements, as required by the rule.

[27] (Second Nelson Decl. ¶ 8, Doc. No. 54-1 ("It does not appear that Kanokwan had a personal email account as she received emails addressed to her through Mark Israelsen's account.").)

[28] (Id. ¶ 9.)

"presumably live" with their mother in Thailand.[29] Again, there is no evidence of attempts to confirm Michael's email addresses are valid, current, or active. Mr. Moglia provides little information about Chanon's July email and does not provide the email itself. It is unclear whether there have been any attempts to confirm if Kanokwan has an email address now that Mark has passed. And Mr. Moglia cites no legal authority permitting a plaintiff to serve a defendant by emailing her sons who "presumably" live with her.[30] Alternative service cannot be based on unsupported presumptions. As presented, the proposed methods for serving Michael and Kanokwan by email are not reasonably calculated to provide them notice of this action and an opportunity to respond.

In sum, Mr. Moglia's proposed methods of serving Jeremy, Michael, and Kanokwan do not comport with constitutional notions of due process. Accordingly, the motions[31] are denied.

DATED this 3rd day of October, 2025.

BY THE COURT:

Daphne A. Oberg
United States Magistrate Judge

---

[29] (Second Mot. 5, Doc. No. 54.)

[30] Indeed, there is no evidence that either Michael or Chanon lives with Kanokwan. Notably, the process server's affidavit only states that Michael "moved to . . . Thailand." (Ex. 2 to Second Nelson Decl., Doc. No. 54-1 at 8.)

[31] (Doc. Nos. 53 & 54.)