UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| ALEX D. MOGLIA, in his capacity as Court-appointed Receiver,<br><br>Plaintiff,<br><br>v.<br><br>JEREMY ISRAELSEN; KANOKWAN ISRAELSEN; MICHAEL ISRAELSEN; ALEXANDRIA GOMEZ, ELEONORE HODGKINSON; and MIGUEL IZZRA,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR DEFAULT JUDGMENT**<br><br><br>Case No. 1:25-cv-00086-JNP-DAO<br><br>Chief District Judge Jill N. Parrish |

Before the court is a motion for default judgment filed by Plaintiff Alex D. Moglia, in his capacity as court-appointed Receiver, against Defendant Miguel Izzra.[1] For the following reasons, the court grants the Receiver's motion. ECF No. 106.

## BACKGROUND

In evaluating a motion for default judgment, the court accepts all of the well-pled factual allegations of the complaint as true. *Equal Emp. Opportunity Comm'n v. Roark-Whitten Hosp. 2, LP*, 28 F.4th 136, 157 (10th Cir. 2022). The Receiver's Complaint establishes the following facts. ECF No. 1.

---

[1] This action is ancillary to litigation involving the Receivership Defendants. *See East West Bank v. QIR Technology Holdings, Inc. et al.*, No. 2:25-cv-00105-JNP-DAO.

Until his death in October 2024, Mark Israelsen sought and ultimately obtained millions in financing and investments from East West Bank and others for a group of businesses that he owned and controlled, the QIR Entities. ECF No. 1 ¶¶ 1–3, 26. Mr. Israelsen obtained these funds through a complex scheme of fraud and misrepresentation. *Id.* ¶¶ 20–29. For example, he represented to lenders that the QIR Entities were thriving, supporting his representations with due-diligence and audit reports that appeared to be prepared by reputable accounting firms like Deloitte but that were actually fabricated. *Id.* ¶¶ 20–25, 38–39. Mr. Israelsen also created numerous bogus shell companies to and from which the QIR Entities gratuitously transferred money to give the false impression that they were conducting actual business and receiving revenue. *Id.* ¶ 27.

Israelsen transferred large sums of the QIR Entities' funds for his own personal use. *Id.* ¶ 3. The Receiver asserts in this action that one of these personal transfers was a transfer of $15,000 on August 19, 2024, made to Defendant Izzra, who was the former partner of Israelsen's fiancée, Haylee Griffin. *Id.* ¶¶ 124–125.

## ANALYSIS

### I.    Default Judgment

Federal Rule of Civil Procedure 55 sets forth a two-step process for obtaining a default judgment against a party who "has failed to plead or otherwise defend" against claims for affirmative relief. First, the clerk of court "must enter the party's default" under Rule 55(a). The clerk of the court did so on February 2, 2026. ECF No. 97.

Second, the non-defaulting party must move the court (or, in certain circumstances, the clerk) for entry of default judgment under Rule 55(b). "[E]ntry of a default judgment is committed to the sound discretion of the district court . . . ." *Tripodi v. Welch*, 810 F.3d 761, 764 (10th Cir.

2016). In order to enter default judgment, the court must first assure itself of both subject matter jurisdiction and personal jurisdiction. *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986). It must then determine whether the plaintiff's complaint contains sufficient facts, accepted as true, to state a claim for relief. *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010). The court may consider declarations and other exhibits when evaluating a plaintiff's claims. *See, e.g.*, *Major Bob Music v. S. Shore Sports Bar & Grill, Inc.*, No. 2:08-cv-689, 2010 WL 2653330, at *1 (D. Utah June 30, 2010).

Ultimately, the court finds that it has jurisdiction and that the Receiver's pleadings contain sufficient factual bases for entry of a default judgment.

### A.   Subject Matter Jurisdiction

The court has supplemental jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1367(a). The Receiver brought this action as an ancillary matter to the original action, *East West Bank v. QIR Technology Holdings, Inc. et al.*, which the court had subject matter jurisdiction over pursuant to 28 U.S.C. § 1332. This action is part of the same case or controversy. *See* 28 U.S.C. § 1367(a); *see also Donell v. Braun*, 546 F. Supp. 2d 1013, 1016 (D. Nev. 2008) ("It is very well established that a receiver does not need an independent basis for subject matter jurisdiction in cases filed to accomplish the ends of the receivership within the court of appointment." (citing *Pope v. Louisville*, N.A. & C. Ry. Co., 173 U.S. 573, 577 (1899))).

### B.   Personal Jurisdiction

The court has personal jurisdiction over Defendant Izzra. The Fourteenth Amendment's Due Process Clause limits a court's ability to exercise jurisdiction over a defendant. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). Whether a court may exercise

personal jurisdiction over a defendant depends on the defendant's relationship with the forum state. *See Bristol-Meyers Squibb Co. v. Superior Ct. of Calif.*, 582 U.S. 255, 261–262 (2017). "The Plaintiff bears the burden of establishing personal jurisdiction over the defendant." *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998) (citation omitted).

"Personal jurisdiction can be acquired through either general jurisdiction or specific jurisdiction." *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 840 (10th Cir. 2020). For individuals, "an individual is subject to general jurisdiction in her place of domicile." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358–59 (2021). Here, the Receiver alleges that Defendant Izzra is domiciled in the State of Utah. ECF No. 1 ¶ 9. The court may therefore properly exercise jurisdiction over Izzra.

### C.    The Substantive Claim

Taking the allegations as stated in the complaint as true, the Receiver has adequately stated his claims for relief. All the claims at issue here are based on Utah law. The court first addresses the Voidable Transfer Claims, which are brought under Sections 25-6-202 and 25-6-203 of Utah's Uniform Voidable Transactions Act. Utah Code Ann. §§ 25-6-202(1), 25-6-203(1). The court then discusses the unjust enrichment claim.

Section 25-6-202(1) makes certain transfers voidable as to a creditor whether the creditor's claim arose before or after the transfer was made. Pursuant to subsection (1)(a), a transfer is voidable if the debtor made the transfer with the "actual intent to hinder, delay, or defraud any creditor of the debtor." Utah Code Ann. § 25-6-202(1)(a). Section 25-6-202(2) outlines factors that may be considered in determining actual intent, including whether "(a) the transfer or obligation was to an insider; . . . (h) the value of the consideration received by the debtor was reasonably

equivalent to the value of the asset transferred or the amount of the obligation incurred; (i) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; [and] (j) the transfer occurred shortly before or shortly after a substantial debt was incurred . . . ." Utah Code Ann. § 25-6-202(2).

The Receiver has adequately stated a claim against Defendant Izzra under § 25-6-202(2), alleging that the transfer was made with the actual intent to hinder, delay, or defraud a creditor. ECF No. 1 ¶ 132. To support that claim, the Receiver alleges that the QIR Entities did not receive reasonably equivalent consideration, *id.* ¶ 133, that Israelsen and the QIR Entities were insolvent, *id.* ¶ 130, and that the transfer to Izzra occurred shortly after Israelsen incurred substantial debts, *id.* ¶¶ 30, 125.

The Receiver has also adequately stated a claim against Defendant Izzra under § 25-6-203. Pursuant to § 25-6-203, a transfer is voidable as to claims arising before the transfer if "(a) the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation; and (b) the debtor was insolvent at the time or became insolvent as a result of the transfer or obligation." Utah Code Ann. § 25-6-203(1).

The Receiver alleges that despite apparent insolvency, Israelsen used the QIR funds to send money to Izzra. ECF No. 1 ¶¶ 125, 130. The Receiver also alleges that QIR Entities did not receive reasonably equivalent value for these transfers. *Id.* ¶ 133.

Finally, the Receiver has adequately stated an unjust enrichment claim against Defendant Izzra. To state a prima facie claim for unjust enrichment, a plaintiff must establish "(1) [t]he defendant received a benefit; (2) an appreciation or knowledge by the defendant of the benefit; (3) under circumstances that would make it unjust for the defendant to retain the benefit without

paying for it." *S6, LLC v. Wing Enters., Inc.*, 2024 UT App 105, ¶ 34, 556 P.3d 100 (quoting *Emergency Physicians Integrated Care v. Salt Lake County*, 2007 UT 72, ¶ 11, 167 P.3d 1080); *see Johnson v. Blendtec, Inc.*, 500 F. Supp. 3d 1271, 1291–92 (D. Utah 2020).

The Receiver alleges that the money transfer was a benefit to Izzra, that Izzra was aware of it, and that it would be unjust for him to keep the money as the money originated with the QIR Entities. ECF No. 1 ¶¶ 135–38. The Receiver thus sufficiently alleged each of his claims, and a default judgment is warranted.

The court also finds that prejudgment interest, as requested by the Receiver, is appropriate. "The Tenth Circuit has previously upheld the award of prejudgment interest at a rate of 5% per annum to a receiver for a fraudulent transfer claim because prejudgment interest 'compensates for the loss of use of the money' and '[u]nder fairness and equity principles, prejudgment interest was proper.'" *Hafen v. Sargent*, No. 2:24-CV-00642-TC-DBP, 2025 WL 1865444, at *2 (D. Utah July 7, 2025) (quoting *Wing v. Gillis*, 525 F. App'x 795, 801 (10th Cir. 2013)).

## CONCLUSION

For the above reasons, the court **GRANTS** the Receiver's motion for a default judgment. ECF No. 106. The court enters default judgment against Defendant Miguel Izzra and awards $15,000.00 and prejudgment interest at a rate of 5% per annum, calculated from the date the payment was received by Izzra to the date the motion for default judgment was filed. Accordingly, the court awards a total of $16,138.36 to the Receiver and against Defendant Izzra.

Signed May 28, 2026.

BY THE COURT

Jill N. Parrish
United States Chief District Judge